### THE TAURUS.

#### THE KATE JONES.

#### SCULLY v. THE TAURUS and THE KATE JONES.

#### BOSTON STEAMBOAT CO. v. SCULLY (two cases).

##### (District Court, S. D. New York. July 10, 1894.)

TOWAGE—GROUNDING OF BARGES—NEGLIGENCE—SALVAGE.

The tug T. took the Blackstone, Condor, and two other barges, to tow through the Sound to Boston. When off Wood's Holl, there was a gale from the northeast, and the tug K., a helper, took the two barges named, and the pilots put into Vineyard Haven for a harbor. The latter tug followed the T., but as they approached Vineyard Haven the K. kept more to the southward and westward, too near to the West Chop, and much nearer than the T. The wind hauled to the east, and, before either the Blackstone or Condor swung to anchor, each grounded. The Blackstone was soon got off, and hauled into better water, by the T., but the Condor lay ashore all night. There were no such obstructions by other vessels as to justify the K. in directing the barges to anchor where she did, and they could have been taken further to the southward and eastward. The available water was nearly a mile wide from where they grounded. The master of the K. was not well acquainted with the shoals in that locality, and the T. did not keep near enough to give directions to the K. The Condor had a free board of but 2½ or 3 feet, and drifted slowly, and neither her condition nor the lack of men contributed to her going ashore. *Held*, that the stranding was caused by the negligence of the tugs, that they were liable for damages to the barges, and that their owner was entitled to pro rata freight only, and could not recover salvage compensation.

Three libels,—one by John Scully, owner of the barges Blackstone and Condor, against the steam tugs Taurus and Kate Jones, etc., to recover damages for injuries to such barges caused by stranding while in tow by libelees; one by the Boston Steamboat Company against John Scully, owner of the barges Blackstone and Condor, for towage; and one by the same libelant against John Scully, owner of the barge Condor, to recover salvage compensation.

McCarthy & Berrier, for Scully.

Wilcox, Adams & Green, for Boston Towboat Co.

BROWN, District Judge. The above actions arose out of the grounding of the barges Blackstone and Condor, at about 7 or 8

p. m., on May 3, 1893, not far from the West Chop, while going into Vineyard Haven, in tow of the steam tug Kate Jones. The barges were first taken in tow at Riker's island by the tug Taurus, with two other barges belonging to the Boston Towboat Company, to be towed through the Sound to Boston. Off New London, the weather being somewhat threatening, the Taurus turned for that port; but soon afterwards the tug Kate Jones, which had been sent forward as a helper, overtook the Taurus, and the two thereupon continued on the course up the Sound. At about 6 p. m., when off Wood's Holl, the weather having increased to a gale from the northeast, or east-northeast, the pilots concluded to cross the Sound and put into Vineyard Haven for a harbor; they thereupon divided the tow, the Kate Jones taking the Blackstone and Condor, one behind the other, each on a hawser from 100 to 125 fathoms long, and following the Taurus, which took the other two barges. As they approached Vineyard Haven the Taurus kept more to the northward, and took her tow a little way inside of the line of the East and West Chops, to within about one-quarter of a mile of the East Chop shore; the Kate Jones kept more to the southward and westward, and rounded much nearer to the West Chop. What followed, is a subject of extreme contradiction and dispute; but it is certain that before either the Blackstone or the Condor swung to her anchor, each grounded on the west shore, probably from a quarter to a half mile distant from the West Chop. The Blackstone, after receiving some injury from pounding, was got off about 9 p. m. by the Taurus, which was signaled for assistance, and on arrival, she hauled her away about three-quarters of a mile into better water, without much difficulty. The Condor lay ashore pounding until the next day, when on examination her bottom was found good, so that after being pumped out, and having about one-fifth of her cargo of 715 tons of coal removed, she was towed to New Bedford and discharged. The first action is to recover for the damages to the two barges on the claim that the stranding was through the negligence of the tugs. The second action was by the tug owners for towage, and the third by the tug owners also, to recover salvage compensation; both of the latter actions being based on the contention that the stranding was by no fault of either tug.

The following findings cover the chief points in controversy. I find:

1. That the Condor was sound and strong below the water line, though her top-sides and deck were poor; that she was rather deeply loaded, having a free board of but 2½ to 3 feet, while the other boats had from 4 to 6 feet; that these circumstances were known to the Taurus before starting from Riker's island; and that with careful and prudent management, the Condor was not unfit for the voyage, and was seaworthy for the trip; that although her decks were poor, she did not take in much water, even when in the trough of the sea, when washed by the waves before grounding; and that her condition, whatever it was, in no way contributed to her going ashore; and that her small free board and deep draught of 16½ feet both retarded her drift towards the shore.

2. That the Condor had on board three men, who were sufficient for the duties required of them, and that she did not ground through lack of men to answer properly the orders of the Kate Jones.

3. That the wind, which, had been about northeast during the day, gradually hauled towards the southeast; and at the time of stranding, was probably about east, which swept the waves towards the westerly shore, where the barges grounded.

4. That the available water for such draught boats was nearly a mile wide, from the point where the barges grounded; that the Kate Jones, instead of keeping towards the lee of the easterly shore, or in midchannel, rounded very much nearer to the West Chop; and when but a little way inside of the line of the East and West Chop she directed the barges to anchor in a place not only too near to the west shore, but where they were exposed to nearly the full force of the wind and the sea,—a place improper for any such barges to anchor, and specially improper for a barge with so low a free board as the Condor's, when there was plenty of water, good anchorage, and easier riding in the lee towards the east shore.

5. That the master of the Kate Jones was not well acquainted with the extent of the shoal water along the shore inside of the West Chop, and that the shoals extended about twice as far out as he supposed.

6. That there were no such obstructions by other vessels at anchor as to be sufficient to justify the Kate Jones in directing the barges to anchor where she so directed them; and that the barges could have been taken without difficulty by the Kate Jones further to the southward and eastward, as the Blackstone was taken not long after by the Taurus; and that the captain of the Blackstone was justified in objecting to anchor where directed, though he cast anchor when told that he must do so, and grounded as he swung to his anchor. This could have occupied but a very short time, and is conclusive proof that the Kate Jones hauled in too near the west shore.

7. That soon afterwards the Condor came up from behind and passed across the bow of the Blackstone, under the impetus of her previous motion, and the slight pull on her given by the tug, before the latter's hawser, which had been given to the Condor, slipped off; that this hawser was hauled in quickly, and another with an eye was thrown to the Condor, which soon after broke, by which time the Condor was nearly ashore; that the time occupied in these maneuvers was short, and wholly insufficient to admit of drifting ashore from any previous proper position for anchoring; while the defendant's testimony, if true,—that the Condor passed 600 feet outside of the Blackstone, which had anchored almost immediately when notified and required to do so,—would prove that the Condor drifted in but slowly.

8. That the Kate Jones, by her high bow, and light draught forward, was to some extent unmanageable in a gale, and was unadapted and unable to render the necessary assistance to the barges in the situation into which she had brought them.

9. That the Taurus was not imprudent or negligent in continuing

on from New London after the Kate Jones came to her assistance, nor in crossing the Sound to anchor in Vineyard Haven; but being the principal in charge, the Taurus is answerable for putting the libelant's two barges in sole charge of the helper tug, which was not easily manageable in such a gale, and for not keeping in her com-pany near enough to give necessary directions from time to time to see that she did not go astray into imprudent anchorage ground, or out of the reach of help in time to avoid accident.

For these reasons, a decree is allowed against both tugs in the first libel; and for pro rata freight only in the second libel. The libel for salvage is dismissed.